## G. H. MAYNARD *v.* ISAAC RAILEY ET AL., UPON A WRIT OF CERTIORARI.

Upon a return to a writ of certiorari, this Court can only inquire whether the tribunal certifying its proceedings has, or not, exceeded its jurisdiction.

The District Court has the power to appoint a receiver on an *ex parte* application, when a proper showing is made, as in this case.

The Court will appoint a receiver when one partner excludes his copartner from a participation in the affairs of the partnership. So, too, when both partners have assigned their respective interests, and the assignees cannot agree.

When suit is brought and summons issued, the Court has power to appoint a receiver before the summons is served on defendants. But the appointment of a receiver ought not to be made without notice, except in cases of emergency.

THIS was a writ of certiorari issued from this Court upon the petition of Thomas H. Williams *et al.*, defendants in the suit of H. G. Maynard against Isaac Railey *et al.*, to the District Court of the Second Judicial District, requiring that Court to show by what authority certain orders were made in relation to the appointment of a receiver, and the taking possession of certain property.

*Williams & Bixler,* for Petitioners.

This writ will be issued when an inferior Court has exceeded its jurisdiction, and there is no adequate remedy by appeal, or when such Court has not regularly pursued its authority. 2d Bacon's Abridgment, " Certiorari."

A suit is not commenced before the summons is issued. This order was made before suit commenced, and therefore without authority. (See Edwards on Receivers, page 13.)

Property cannot be seized except upon due process of law, and after hearing.

Defendants Williams & Frankenthal were in possession of the property, and within the jurisdiction of the Court. No order depriving them of their property could be made without notice. (Edw. on Receivers, pages 14 and 15.)

The plaintiff only claims that he is tenant in common with defendants. The utmost the Court could do would be to appoint a receiver to collect his share of the rents.

*Geo. A. Nourse* and *R. M. Clarke,* for Respondents.

21

The question here is not whether the Court below erred in appointing a receiver, but whether it exceeded its jurisdiction. The District Court certainly had jurisdiction of the subject. matter (a suit in equity) and of the parties in this action. Courts of Equity have the power to appoint receivers. How has the Court exceeded its jurisdiction ? Such orders are constantly made by Courts of Equity. (See 3d Pier Williams 379, cited in Edwards on Receivers, 12.)

The bringing of the suit gave the Court jurisdiction. (*Ex parte Cohen*, 6 Cal. 320 ; *Prader* v. *Purkett*, 13 Cal. 591.)

In all cases of emergency (and of this the Court below is the judge) Courts of Equity appoint receivers before answer is made. (*Gibson & Harris*, v. *Martin*, 8 Paige, 481 ; *Vann* v. *Barnett*, 2d Brown's C. C. 157 ; *Middleton* v. *Dodswell*, 13 Vesey, 266 ; *Lloyd* v. *Passingham*, 16 Vesey, 59 ; *Scott* v. *Beecher*, 4 Price, 346 ; *Bloodgood* v. *Clark*, 4 Paige, 574 ; *Duckworth* v. *Trafford*, 18 Vesey, 283.)

Opinion by LEWIS, C. J., full Bench concurring.

This case comes before this Court upon a writ of *certiorari* issued to the District Court of the County of Ormsby, the defendants claiming that the Court below had exceeded its jurisdiction in the appointment of a receiver of certain property and business in which all the parties to the action seem to claim some interest.

Section 403 of the Civil Practice Act of this State, provides that " this writ may be granted on application by any Court of this State, except a Justice's Court, in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal, nor in the judgment of the Court any other plain, speedy and adequate remedy ;" and Section 409 of the same Act declares that " the review upon the writ shall not be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer." Evidently, the only question which can properly be inquired into upon this writ, is that of jurisdiction.

If it appear that the jurisdiction of such tribunal, board, or officer has not been. exceeded, there is no foundation for the writ.

The expression employed in the latter section above quoted, that the inquiry shall extend no further than to determine whether the inferior tribunal " *has regularly pursued its authority,*" certainly does not authorize an inquiry into any irregularity or question beyond that of jurisdiction. If the issuance of the writ is only permitted when an inferior tribunal, board, or officer has exceeded his or its jurisdiction, it is clear that no other question but that of jurisdiction can be inquired into upon its return. A mere irregularity, however gross it may be, cannot properly be the subject of inquiry upon it. Hence, we will confine our considerations to the question of jurisdiction simply.

Section 143 of the Practice Act, which reads as follows, expressly gives the District Court the power to appoint a receiver in certain cases: " A receiver may be appointed by the Court in which the action is pending, or by a Judge thereof. First, before judgment, provisionally, on the application of either party when he establishes a *prima facie* right to the property, or to an interest in the property which is the subject of the action, and which is in possession of an adverse party, and the property or its rents and profits are in danger of being lost or materially injured or impaired. Secondly, after judgment, to dispose of the property according to the judgment or to preserve it during the pendency of an appeal; and thirdly, in such other cases as are in accordance with the practice of Courts of Equity jurisdiction." .

This section, it seems to us, settles the question of the power of the Court to appoint a receiver in proper cases, and the complaint as clearly makes out a case in which the relief claimed by the plaintiff could not properly be refused. The bill or complaint contains substantially the following allegations : That in the month of July, A.D. 1864, the defendant Isaac Railey, and one J. Neely Johnson, both of the County of Ormsby and State of Nevada, formed and entered into a copartnership for the purpose of erecting a quartz mill in said county for crushing and reducing gold and silver-bearing rock, and extracting therefrom the precious metals ; that the copartnership thus formed transacted their business under the firm name of Johnson & Railey ; that two hundred acres of land which were necessary .to the convenient working of the quartz mill were purchased, and the mill erected thereon ; that the co-

partnership thus formed carried on the business of crushing and reducing gold and silver ores, from the twenty-second day of August, A.D. 1864, to the sixth day of March, A.D. 1865; that during this period, the defendant Railey managed and controlled the entire business of the concern, which was very profitable, and that during that time he received as profits therefrom at least the sum of thirty thousand dollars; that out of such profits, Johnson had not received over six hundred dollars, although he was entitled to one-half of the net profits of the business; that in the month of March, A.D. 1866, the defendant Railey ousted Johnson from the possession of the mill, land, and all other property of the firm, and deprived him of all participation in the management of their property and business, and has ever since deprived him of all such control, and has ever since appropriated all the profits of the business to his own use; that in the month of September, A.D. 1866, Johnson, by his deed bearing date of that day, granted, bargained, sold and conveyed to the plaintiff in this action all his right, title and interest in and to the said land, mill, and all other personal property belonging to the firm of Johnson & Railey, together with all rights and claims of whatever description held or owned by him against the defendant Railey arising out of the business transactions of the partnership; that on the seventh day of August, A.D. 1866, Railey absconded from the State of Nevada, leaving the defendants Frankenthal and Williams in possession of all the property, real, personal and mixed, belonging to the said partnership; that Railey is and was at the time of his absconding, insolvent and totally irresponsible, and that Frankenthal and Williams are also insolvent and irresponsible; that on the fourth day of October, A.D. 1866, the plaintiff demanded of the defendants Frankenthal and Williams, who were in possession of the property under Railey, to be let into possession thereof, but that they refused to give him such possession; that the use of the mill is *reasonably* worth the sum of twenty-five hundred dollars per month, and that owing to the insolvency of Railey, Frankenthal and Williams, the plaintiff is in danger of losing all the profits from the business of the firm, and all the rents of the mill and other property.

Upon a sworn complaint containing these allegations, the Court below made an order appointing one Thomas G. Taylor receiver of

all the property of the firm of Johnson & Railey, and all the rents, issues, and profits thereof, and upon the refusal of the parties in possession to surrender the possession and control of the property to the receiver, the Court made an order directing the Sheriff of the County of Ormsby to place him in possession thereof. A stronger case for the interposition of a Court of Equity by the appointment of a receiver could hardly be made out.

In partnership cases where all the partners have an equal right, not only in the conduct of business, but also in its settlement after dissolution, a failure to agree among themselves, or the refusal of one partner to allow the other to participate either in conducting or the settlement of the business, obviously presents a case for the appointment of a disinterested party under the direction of the Court to close up the business and protect the property. When the conduct of one partner is incompatible with the relations of the copartnership, and is likely to result in loss or injury to any of his copartners, it has been the invariable practice of Courts of Equity, upon the application of any of the partners, to dissolve the partnership and appoint a receiver. " Where," says Mr. Edwards, " either partner has a right to dissolve the partnership, and the agreement between the parties makes no provision for closing up the concern, it is a matter of course to appoint a manager or receiver on a bill filed for that purpose, if they cannot arrange the matter between themselves." (Edwards on Receivers, 309.) A receiver will be appointed to settle up the business when it is shown that the surviving partner is insolvent, dishonest, or is not a fit person to close up the affairs of the partnership. (Id.)

Where two members of a partnership obtained a renewed lease of the partnership premises, and the administratrix of a deceased partner showed a *prima facie* title to participate in the benefits of it, a receiver was appointed to protect the property until the rights of the parties could be determined. (Id. page 310.) So upon a bill filed by the assignees of a bankrupt partner against the solvent partners, praying for the sale of the partnership effects, a division of the proceeds, and for a receiver, Lord Eldon decreed according to the prayer of the bill. " The consequence is," said his Lordship, " that the assignees of the bankrupt partner are become *quoad*, his interest tenants in common with the solvent partners ;

and the Court must then apply the principle upon which it proceeds in all cases where some members of a partnership seek to exclude others from that share to which they are entitled, either in carrying on the concern, or in winding it up when it becomes necessary to sell the property, with all the advantages relative to good will, etc." The case of *Phillips* v. *Atkinson* (2 Brown's Ch. Cases, 272) seems to be directly in point here. In that case the plaintiff's and defendant's testators had been partners. A bill was filed for an account and the appointment of a receiver. The defendant opposed the appointment of a receiver as an imputation upon his character, insisting that he was a proper person to receive. Lord Kenyon, in delivering the opinion, said : " It was not at all so ; that where there was a copartnership there is a confidence between the parties, and if the one dies, the confidence in the other partner remains, and he shall receive ; but when both are dead, there is no confidence between the representatives, and therefore the Court will appoint a receiver." In the case under consideration, although neither of the partners are dead, yet their respective interests, having passed to third parties, the reason for appointing a receiver is the same in this case as in that of *Phillips* v. *Atkinson.* A receiver will also be appointed where any of the partners seek to exclude another from taking that part in the concern which he is entitled to have, whether such attempt to exclude occurs during the continuance of the partnership, or after its dissolution, and during the closing up of the business. (Edwards on Receivers, 329, and cases there cited.) Upon this point Lord Eldon, in the case of *Court* v. *Harris*, (1 Turn. and Reess, 496) says : " The most prominent point in which the Court acts in appointing a receiver of a partnership concern, is the circumstance of one partner having taken upon himself the power to exclude another partner from as full a share in the management of the partnership as he who assumes that power himself enjoys." In the case of *Williams* v. *Wilson*, (4 Sandford's Ch. R. sec. 79) where it appeared that a partnership, which had been formed for the purpose of conducting an insane hospital and immigrant *lazaretto*, was broken up by cross suits and disagreements among the partners, the Court allowed a receiver, with directions to sell immediately the lease of the premises occupied, and the movables and good will of the premises. Chancellor Walworth, in de-

livering the opinion of the Court in the case of *Martin* v. *Van Schnick*, (4 Paige Ch. R. 479) uses the following language :

"Each partner has an equal right in this case to the possession and control of the partnership effects and business, and if they cannot agree among themselves, it is a matter of course to appoint a receiver upon a bill filed to close the partnership concerns on the application of either party."

These authorities clearly sustain the plaintiff's right to the appointment of a receiver upon the case made out in his complaint. Hence we have shown that the Court below not only had the power to appoint a receiver, but that the case made out by the bill fully warranted the exercise of that power.   But it is claimed the Court had no jurisdiction to appoint a receiver at the time it did, because summons had not been served on the defendants, and no notice of the application given to them.   An action had, however, been commenced, and summons had been issued when the receiver was appointed by the Court, and it had full jurisdiction of the subject matter.   The very reason why a Court of Equity interposes in cases of this character is to prevent the mischiefs which might result from the tardy remedy of the Courts of law.   It is a familiar rule that equity will always lend its aid where the remedy in the Courts of law is not adequate, or the delay in obtaining it is likely to result in injury or damage to the party seeking its aid.   If a Court of Equity could make no order of the character made in this case until the service of summons on the parties to be affected by it, or until it was shown that they were purposely avoiding its service, equity would be shorn of half its efficacy.   Many of the summary remedies which it affords are merely preventive, employed for the purpose of protecting a party from a threatened injury, but which, in many cases, would be utterly nugatory if the Court were not permitted to employ it until after the summons or notice.   If the parties to be affected by the appointment of a receiver were beyond the jurisdiction of the Court, so that service of the summons could only be obtained by means of its publication, all the property sought to be protected by his appointment might possibly be wasted or destroyed, and the Court would thereby fail to grant that protection or relief which, by the clearest principles of justice, ought to be awarded.   The power exercised by the Court in the appoint-

ment of a receiver upon an *ex parte* application, as was done in this case, is analogous to that exercised in granting a restraining order or temporary injunction.   It is not unusual for the Courts to grant a restraining order upon *ex parte* application at the time of the issuance of the summons and before it is served, and yet in many cases such an order would as effectually deprive a person of the full enjoyment of his property as the appointment of a receiver ; and we have never heard it claimed that before such order could be made, summons must first be served on the person to be enjoined, or that if it were made before the service of summons, he was being deprived of his property without due process of law. As suit had been commenced, summons issued, and the Court had jurisdiction of the subject matter, we do not think it exceeded its jurisdiction in appointing a receiver.   However, as the bill does not exhibit any great and pressing necessity for an immediate appointment of a receiver without notice to the defendant, the Court did not exercise that caution which should be observed in making orders of this character.   Such an error cannot, however, be corrected upon this proceeding.

A receiver should not be appointed *ex parte* except in cases where it is clearly shown that the delay which would result from the giving of notice would defeat the rights of the complainant, or result in great injury to him.   Cases may unquestionably arise where an immediate and *ex parte* appointment of a receiver would be necessary to afford the plaintiff that protection to which he may be justly entitled.   This case does not, however, present any such pressing necessity, and we think notice should have been given; yet as the order has been made, it should be allowed to stand until the defendant show cause why it should be set aside.

The order of the Court below is affirmed.