In the Matter of HENRY BURGE, Petitioner. OCEANIC TRADING
Co., INC., Respondent.

Supreme Court, Special Term, New York County, December 8, 1952.

*Edward K. Hanlon, Milton Weiss* and *Quentin J. De Fazio* for respondent appearing specially.

*Martin Evans* for petitioner and receiver.

EDER, J. In March, 1952, one Henry Burge, a resident of this State and a stockholder of Oceanic Trading Co., Inc., a foreign corporation, filed with this court his ex parte petition praying for the appointment of a special receiver for certain assets in this State alleged to belong to it, said to consist of causes of action against one David C. Milton and one Ellery C. Huntington. The petition averred that said named persons were residents of this State and had offices here; that they jointly had and have working control of the corporation. By the allegations of the petition they were charged with breaches of fiduciary duties, with waste, mismanagement and with improper diversion of funds of the corporation in a sum in excess of $1,000,000.

Oceanic has no office for the transaction of business in this State, nor does it do any business within this State; nor has it registered with the Secretary of State; but it has an agency in the city of New York for the transfer of its stock, to wit, the Manufacturers Trust Company of New York.

The court, being satisfied from the facts set forth that prima facie there existed against said persons a cause of action in equity to impress a trust and to require them to account as fiduciaries and that in the situation described an imperious necessity appeared requiring the appointment of a special receiver to secure and preserve said assets, granted the application and by an order made on April 1, 1952, appointed a special

receiver to take possession of said assets and hold the same subject to the further orders of the court; and the receiver was also empowered to take such action as was necessary, or might become so, to protect and conserve said assets for the benefit of the corporation. It appeared to the satisfaction of the court that by reason of said Milton and Huntington possessing control of Oceanic, said corporation, it was quite evident, would not take action against them to compel them to account for and return to the corporation the sums alleged to have been improperly obtained and diverted by them.

In granting said ex parte application the court filed an opinion which set forth pertinent facts and the reasons for granting the desired order and appointing a special receiver (*Matter of Burge* [*Oceanic Trading Co.*], 112 N. Y. S. 2d 906). The order, it is to be noted, adjudicates no rights, makes no final determination of any sort, in any respect, but is wholly interlocutory in character.

It appears that after his appointment the special receiver commenced an action in this court in which said Milton and Huntington are named as defendants, the summons being served upon them, personally, in this State. It is to be observed that they do not move to vacate or set aside the order as against them personally, nor do they assail its validity in any manner.

Rather, it is Oceanic Trading Co., Inc., over whom it is alleged they jointly have working control, who now moves to set aside the order, asserting the court was without power to make the appointment. In support thereof it is maintained that an order appointing a receiver of a corporation can only be made in a *pending action* and that the power of the court in that regard is governed and controlled by subdivision 3 of section 150, and section 222 of the General Corporation Law; that, in the instant case, while Oceanic, as a foreign corporation, is amenable to these provisions because it has an agency here for the transfer of its stock, even so said provisions may not be invoked and are not operative unless at the time of application for appointment of a receiver there is a pending action; further, assuming appointment of a receiver can be made in a *special proceeding* there is no statutory or other authority permitting appointment of a receiver in such a type of " special proceeding " as the instant one in which the order was made. In sum, as the court apprehends it, it is the movant's position that in the absence of express *statutory* authorization to do so the court was without power to act as it did.

This is viewed as an untenable contention.

At the outset it is appropriate to direct attention to the fact that the special receiver was not appointed receiver of the corporation but only receiver of particular assets consisting of certain choses in action, for the benefit of the corporation. The distinction between a receiver of the corporation and of certain particular assets of the corporation which are in this State, to preserve them for the benefit of the corporation, is alluded to and discussed in the opinion filed at the time the order was made appointing the special receiver.

Movant's postulate that the order was made in a "special proceeding" is an erroneous one. The order appointing the special receiver was not made in a special proceeding. Nor was it made in an action. It was made on an ex parte motion anterior to the formal commencement of an action, upon a petition, the allegations of which disclosed that it was imperatively necessary that a receiver be appointed to protect and preserve the said causes of action as assets of the corporation, as an essential step preliminary to the formal institution of the action, which, as a result of the approaching Statute of Limitations might prove futile and render nugatory the ultimate decree of the court if a receiver was not appointed, it being improbable that Oceanic would take action against said Milton and Huntington by reason of the fact that they jointly had working control of the corporation.

That this result was likely and that this allegation is one of substance and merit is now shown, for it is significant to note that although the special receiver was appointed to protect and preserve said causes of action against said Milton and Huntington, for the benefit of the corporation, strangely enough, Oceanic, instead of co-operating with the receiver to achieve success therein, moves to set aside the said order of appointment, thereby relieving said Milton and Huntington from accounting for the acts of misconduct and liability, charged against them as fiduciaries, a most extraordinary situation.

The ex parte application for the appointment of a special receiver did not involve the determination of or affect the substantive rights of the parties, a basic factor with which an action or special proceeding is identified and which is its purpose in either respect. That ex parte application was not an action since there were no parties plaintiff and no parties defendant; there were no pleadings; no summons was served; there was no trial; there was no determination made; no judgment was rendered.

Similarly, it was not a special proceeding, which is more analogous in its purpose and scope to an action, the difference being that the parties prosecuting are named as petitioner or relator instead of plaintiff, and the party proceeded against is named respondent instead of defendant. As to pleadings there is a petition in place of a complaint; the answer is sometimes called a return; as to process no summons is served; in its stead a notice or order to show cause initiates the proceeding; the procedure as to trial is somewhat summary in character; affidavits may be employed on either side to make the issue between the parties (*Matter of Jetter*, 78 N. Y. 601, 605; *Matter of Rensselaer & Saratoga R. R. Co.* v. *Davis*, 55 N. Y. 145, 148; *Matter of Levine* v. *Lending*, 176 Misc. 462).

Unlike a motion, a special proceeding has all the elements of a litigation in a court of justice; it is not an ordinary litigation because the proceeding is special as prescribed by statute; and while it is not an action, it is a *remedy*, and is therefore a special proceeding (*Matter of Jetter, supra*, p. 604). Remedies are divided by the Civil Practice Act into actions and special proceedings (Civ. Prac. Act, §§ 4, 5; also, General Construction Law, §§ 11-a, 46-a). An action is an ordinary prosecution in a court of justice by a party against another for the enforcement or protection of a right, or the redress or prevention of a wrong (Civ. Prac. Act, § 4; General Construction Law, § 11-a), commenced by the service of a summons (Civ. Prac. Act, § 216). Every other prosecution by a party in a court of justice which is not an action, is a special proceeding (Civ. Prac. Act, § 5; General Construction Law, § 46-a), and is commenced by the service of a notice or order to show cause (Civ. Prac. Act, § 1289).

A motion is not a *remedy* in the sense of the Civil Practice Act but in general relates to some incidental matter collateral to the main object of an action (*Jetter* and *Rensselaer* cases, *supra*). Motions relate generally to matters of procedure or to matters which do not finally determine substantive rights. Actions or special proceedings relate to and affect substantive rights of the parties. The former, viz., motions, deals with adjective law; the latter, viz., actions or special proceedings, deal with substantive law. The distinction is both apparent and real.

The procedure here employed appointing the special receiver not being by way of action or special proceeding it constitutes a motion (*Jetter* and *Rensselaer* cases, *supra*; cf. *State ex rel.*

*Ashley* v. *Circuit Court for Milwaukee Co.,* 219 Wis. 38). An application for an order is a motion (Civ. Prac. Act, § 113).

The basal point then is whether a court of equity in the absence of express statutory authorization possesses inherent power, in an emergency, and prior to the formal commencement of an action by service of summons, to appoint a special or temporary receiver for a corporation to take possession of certain particular assets, to secure and preserve them to prevent their loss to the corporation and to hold them until the further orders of the court as to their ultimate disposition.

Inherent power is that which is necessary to a court for the proper and complete administration of justice and which is resident in all courts of superior jurisdiction and essential to their existence. In this connection it is recognized that the right of a court of equity to appoint a receiver ex parte for the preservation of property is an inherent part of its equity powers and that without such authority the power to determine the controversy might be rendered nugatory (*Hegewisch* v. *Silver,* 140 N. Y. 414, 420; *Popper* v. *Supreme Council of Order of Chosen Friends,* 61 App. Div. 405; *Taylor* v. *Easton,* 180 F. 363, 367; *Maynard* v. *Railey,* 2 Nev. 313; *Young* v. *Hamilton,* 135 Ga. 339, 346; *Parrish* v. *Rigell,* 183 Ga. 218; *Webb* v. *Hicks,* 117 Ga. 335).

In appointing the special receiver, the court, in the emergent case presented, did so independently of any statute. As the opinion it filed indicates it acted on the premise that, as a court of equity, it possessed inherent power to take temporary possession and control of the mentioned particular assets of the corporation until the ultimate disposition thereof in order to prevent their total loss to the corporation.

When the Code was adopted, later succeeded by the Civil Practice Act, and when the afore-mentioned provisions of the General Corporation Law were enacted, relating to and authorizing the appointment of a receiver in a pending action, they in no way deprived the court of equity of its inherent power to appoint a temporary receiver anterior to the actual commencement of an action by formal service of summons on the defendant, where, in an emergency, such a course was imperative; and there is nothing in any of the statutory enactments which so declares.

The Supreme Court of New York has its origin through a statute passed by the Legislature of the colony of New York on May 6, 1691, vesting it with the same powers as the Courts

of Kings Bench, Common Pleas and Exchequer in England; this act founded the Supreme Court (*Matter of Steinway,* 159 N. Y. 250, 255–256; Fowler, Organization of the Supreme Court, 19 Alb. L. J., 209, 211). The Court of Exchequer had equity jurisdiction which was transferred to the Court of Chancery by the Court of Chancery Act (5 Vict., ch. 5 [1841]).

The Constitution continued the Supreme Court and in doing so conferred upon it all the power which was exercised by the Supreme Court of the Colony of New York and the Court of Chancery in England on July 4, 1776 (*Matter of Hubbard,* 82 N. Y. 90, 92; *Genet* v. *President of Delaware & Hudson Canal Co.,* 113 N. Y. 472, 474; *Matter of Gould,* 257 App. Div. 109, 114, revd. on other grounds 282 N. Y. 132; Civ. Prac. Act, § 64).

The basic equity powers thus conferred were embodied in our first State Constitution in 1777 which provided (art. XXXV) that the common law of England would be continued as the law of this State; each Constitution adopted since that time has continued such equity powers (N. Y. Const., art. VI, § 1).

By the Constitution of 1846 the Court of Chancery in this State was abolished and its powers were transferred to the Supreme Court (art. VI, § 3; art. XIV, § 5).

In England the Court of Chancery has, upon ex parte application, exercised the power to appoint a receiver before service of a subpœna to appear (*Pitcher* v. *Helliar,* 2 Dick. 580, 21 Eng. Repr. 396; *Meaden* v. *Sealey,* 6 Hare, 620, 67 Eng. Repr. 1310). Similarly, the Chancery Court has appointed a receiver upon presentation of a petition without suit (*Matter of Reynolds,* 19 L. T. [O. S.] 311 [1852]). The Chancery Court has appointed a receiver where the property was an asset consisting of a chose in action (*Candler* v. *Candler,* Jac. 225; 37 Eng. Repr. 834, 837).

While some courts have held that a receiver may not be appointed before suit is formally commenced by service of summons and that an action is not pending before such service, it is not precisely accurate to say that the court cannot make such appointment even in a proper and emergent case in advance of the formal commencement of an action. There is diversity of views; there are two schools of thought; all jurisdictions are not in accord.

The following cases are cited in support of the view of this court that it possessed the power to make the order appointing the special receiver upon the filing of the petition with the court and prior to the commencement of a formal action against the defendants by service of summons upon them.

In *Young* v. *Hamilton* (135 Ga. 339, *supra*) an order was made ex parte, appointing a temporary receiver, upon presentation of a petition and it was contended it was void because the order was made before the petition was filed in the clerk's office. The court held that it could, in emergent cases, make, an order appointing a temporary receiver, to preserve the status, in advance of the filing of a bill of complaint, and before suit, and that when the bill has been filed the jurisdiction of the court, which, at the time of the granting of the order was inchoate, became perfect upon the filing, followed by service.

It was held, further, that the appointment of the receiver was not a proceeding *coram non judice*.

In the instant case service of the petition and order was made on Oceanic following the appointment of the receiver.

So, here, when personal service of the summons in the special receiver's action was made in this State on said Milton and Huntington, as defendants therein, the inchoate jurisdiction which existed at the time of the granting of said order appointing the special receiver thereupon became perfect and complete. It is evident, too, that their appearance and presence in this State were voluntary and no claim is made to the converse.

In *Parrish* v. *Rigell* (183 Ga. 218, *supra*) it was held that an equity court may, in a proper case, appoint, ex parte, a temporary receiver before the filing of an answer to a petition and in some cases of emergency such action may be taken even before a petition is filed.

In *Webb* v. *Hicks* (117 Ga. 335, *supra*) it was contended that a court of equity cannot take possession of property by an ex parte order based upon petition when there was no pending action at the time. The court held that a court of equity possessed power to make such an order without formal service of process having to be first made. The court said: " This particular and limited class of orders may be granted in some cases without the petition being filed or docketed, and without formal process or formal service thereof ". (P. 339.) " These interlocutory orders do not necessarily have to be passed after process is issued or service has been made. For as soon as a court of equity has before it a petition as to persons or a subject-matter of which it has jurisdiction, it can, without notice, grant a temporary restraining order * * * or appoint temporary receivers ". (P. 340.)

In *St. Louis & Sandoval Coal & Mining Co.* v. *Sandoval Coal & Mining Co.* (111 Ill. 32) it was held that the court may, on a proper showing, appoint a receiver to take charge of the assets of a corporation and save the same from destruction or waste before acquiring jurisdiction to adjudicate upon the rights of the corporation and that in such a case the receiver may be authorized to hold the same until the rights of the parties are settled and determined. Said the court (p. 39): " The appointment of a receiver in such case is in the nature of an equitable attachment, whereby the court acquires, through its officer, the custody of property or assets, to be retained until it has acquired jurisdiction."

In *Maynard* v. *Railey* (2 Nev. 313, *supra*) the court appointed a receiver before service of the summons on the defendants and it was claimed that the court had exceeded its jurisdiction in the appointment of a receiver of certain property; that a receiver could only be appointed in a pending action and that no action was pending until service of the summons had been made. In overruling the contention the court said (p. 319): " But it is claimed the Court had no jurisdiction to appoint a receiver at the time it did, because summons had not been served on the defendants, and no notice of the application given to them. * * * If a Court of Equity could make no order of the character made in this case until the service of summons on the parties to be affected by it, or until it was shown that they were purposely avoiding its service, equity would be shorn of half its efficacy. Many of the summary remedies which it affords are merely preventive, employed for the purpose of protecting a party from a threatened injury, but which, in many cases, would be utterly nugatory if the Court were not permitted to employ it until after the summons or notice."

The court went on to say that the power which was exercised by the court in the appointment of a receiver upon an ex parte application, as was there done, is analogous to that exercised in granting a restraining order or temporary injunction and that it is not unusual for courts to grant a restraining order upon ex parte application and before the summons is served.

Seemingly, the precise factual situation and legal question with which we are here concerned has not heretofore been passed upon in this State.

The court is unable to perceive in the statutes cited by movant's counsel anything therein which indicates that it was the legislative intent to divest the court of equity of its inherent

powers in general or of its inherent power to appoint, ex parte, a temporary receiver, in an emergent case, as was done here, prior to the commencement of an action by formal service of a summons, assuming, *arguendo*, the Legislature possessed the power to abridge, infringe upon or destroy such inherent right of the court of equity. It is, however, the established law that the powers of the court of equity, continued by the Constitution, are not subject to change by action of the Legislature (*People ex rel. Mayor* v. *Nichols*, 79 N. Y. 582, 590; *Genet* case, *supra*).

In the situation mentioned it is the considered view of the court that upon the allegations of the petition, and under its inherent power as a court of equity, it possessed the right to appoint a special receiver, as it did, prior to the formal commencement of the action by formal service of summons on the defendants, for the reasons above set forth. It is declared that " Authority to conserve exists *ex necessitate rei* " (*Severnoe Securities Corp.* v. *London & L. Ins. Co.*, 255 N. Y. 120, 123). Of necessity many acts may be done which would not be justifiable without it; this rule is invoked by a court of equity in a proper case and thereby property is protected *ex necessitate rei*, which, under other circumstances, would not be so.

Oceanic further contends that the order appointing the special receiver was ineffective stating that there were no assets of the corporation in this State upon which the receivership could fasten and that the presence of assets here was essential as the court could not appoint a receiver of property situated without the State. As the court comprehends it, it is movant's premise that the choses in action against Milton and Huntington are personal property involving a debt from them to the corporation and that the situs of a debt or chose in action is where the debtor or creditor resides; that neither the corporation nor said Milton and Huntington are residents of this State and hence the order was erroneously granted.

The matter of the effectiveness of the order appointing the receiver is separate and distinct from the power of the court to make it.

A debt or chose in action is an intangible thing; a special form or species of personal property; it is expressly recognized by statute — " things in action " (General Construction Law, § 39); as such species of property it is transitory and may be enforced wherever the debtor may be found (*Severnoe* case, *supra*, p. 123).

As to the situs of tangibles and intangibles, the court, per CARDOZO, Ch. J., in the *Severnoe* case, states the following (pp. 123–124): " Tangibles have a legal situs in the State of physical location * * *. Intervention by a conservator may be necessary in that place if they are to be salvaged for the owners. The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. * * * At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions."

Milton and Huntington were personally served in this State with the summons in the receiver's action and there is no dispute that their appearance and presence here were voluntary; nor is there any dispute that they at all times had and still have offices in this State; thus the situs of the debt and choses in action was in this State, aside from the fact that the debt and choses in action which followed them were simultaneously present here. There was thus personal property of the corporation upon which the receivership fastened automatically and *eo instante* and in the opinion of the court the order of appointment was fully operative and effective as to those assets (Cases, *ut supra*).

As pointed out in the *Severnoe* case (*supra*) as to locale of intangibles, " At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions ".

In the situation disclosed and under the particular circumstances of the case, it is the view of the court that the situs of the debt and choses in action was and is in this State.

Oceanic submits the final contention that the order of appointment is void as violating the due process of law clauses of the National (Amendt. XIV) and State (art. I, § 6) Constitutions in that without notice to it, the court, upon an ex parte application, has appointed a receiver of its property thereby divesting it of title to its said assets.

The claim is regarded as lacking in merit.

The cases cited in support of movant's contention are inapplicable. There the receiver, by virtue of his appointment, was,

by the statute, *vested* with *title* to the property. It is not the case at bar. Here the special receiver is not vested with *title* by the order of his appointment or by virtue of any statute. He is merely given temporary possession, subject to the further orders of the court; he is, in legal status, but a custodian.

There is an obvious difference in the status of equity and chancery receivers and statutory receivers. An equity or chancery receiver obtains no title to the property placed in his charge as does a statutory receiver where the statute so provides.

Where a *change* of *title* takes place *without notice* to the *owner* there is a taking of property without due process of law unless the constitutional notice is given by relation through subsequent proceedings.

In the case of an equity or chancery receiver the placing of the possession of property in his care for purposes of conservation or preservation is not such a drastic interference with the rights of the owner as constitutes a taking of property without due process of law within the constitutional meaning of those provisions. The temporary seizure and holding of property, awaiting judicial action, does not violate the mentioned provisions of the Federal and State Constitutions (*Cook* v. *Gregg,* 46 N. Y. 439, 442; *Colon* v. *Lisk,* 13 App. Div. 195, 200, affd. 153 N. Y. 188; *Attorney-General* v. *North American Life Ins. Co.,* 82 N. Y. 172, 183–184; 12 C. J., Constitutional Law, p. 1223, § 998).

Apropos is the statement of the court in *Maynard* v. *Railey* (2 Nev. 313, *supra*) where the court after pointing out that the granting, ex parte, of a temporary injunction before the summons is served as effectually deprives a person of the full enjoyment of his property as the appointment, ex parte, of a temporary receiver, says (p. 320): "We have never heard it claimed that before such order could be made, summons must first be served on the person to be enjoined, or that if it were made before the service of summons, he was being deprived of his property without due process of law."

For the foregoing reasons and those set forth in the opinion filed on the ex parte motion for the appointment of the special receiver, the motion to vacate and set aside said order of appointment is denied. Settle order.