**UNITED STATES of America**

v.

**Richard J. GORDON, Defendant.**

**Nos. 79–CR–135, 80–CR–24.**

United States District Court,
N. D. New York.

May 23, 1980.

See also, D.C., 493 F.Supp. 814.

George H. Lowe, U. S. Atty., N.D.N.Y., Albany, N. Y., for U. S.; William J. Dreyer, Asst. U. S. Atty., Albany, N. Y., of counsel.

Herald Price Fahringer, New York City, E. Stewart Jones, Jr., Troy, N. Y., for defendant; Barbara Davies Eberl, Buffalo, N. Y., of counsel.

JAMES T. FOLEY, Chief Judge.

MEMORANDUM–DECISION and ORDER

The above two indictments were separately filed in this Court, No. 79–CR–135 on November 7, 1979, and No. 80–CR–24 on March 28, 1980. The first one is in nine counts, eight charging the defendant with violations of Title 18 U.S.C. § 1341, and the ninth count charging violation of Title 18 U.S.C. § 2314. The March two-count indictment charges in one count against the defendant violation of Title 18 U.S.C. § 1014 and in Count II violation of Title 18 U.S.C. § 2314.

In an omnibus motion of great proportion, issues are raised in behalf of the defendant that any oral statements made by the defendant in connection with the case

should be suppressed, particularly any made by the defendant to the FBI Agents at the time of his apprehension and arrest. The claim in this regard is that such statements were extricated from the defendant in the absence of his attorney, even though the Agents knew at the time he was represented by counsel. That the statements were elicited under coercive circumstances, without valid or voluntary waiver of constitutional rights and privileges. The next challenge is that of unreasonable search and seizure, and it is narrowed down to the seizure of a sum of money from the person of the defendant at the time of arrest, and the seizure of airline tickets only for inspection and notation purposes by the Agents that were on a coffee table in the living room of the apartment in which the defendant was arrested in Washington, D.C. The defense claim is that the seizures were made without a search warrant, and not incident to lawful arrest within the constitutional meaning of the concept. The last issue is whether the seizures of defendant's business records by the New York State Department of Insurance under an order issued by a New York State Supreme Court Justice were lawful or violative of the Fourth Amendment. It should be noted that by agreement of the attorneys that these motions, and the other contained in the omnibus motion, upon which determination is still pending, are to be considered as filed against the second indictment. A motion by the government has been filed to consolidate the two indictments for trial.

A suppression hearing was held on April 22, 1980 by the Court in Albany on the seizures, the voluntariness and legality of the oral statements, and the lawfulness of the seizure of business records by the State Department of Insurance. It was not a prolonged hearing or complicated in the facts developed by the testimony of two witnesses and five exhibits. The witnesses were Special Agent of the FBI, John N. Richardson, stationed in Washington, and the defendant himself. Despite the simplicity of the factual situation as testified to by the two witnesses with no serious disagreement as to the happenings at the time of

arrest in the apartment and custody thereafter of the defendant by the FBI in an automobile and the FBI office, as expected there is still the need for analysis of pertinent judicial writings that are filled with nuances, refinements and close distinctions, difficult to apply to a differing factual situation than the ones upon which the standards to be met are based. The attorneys have submitted helpful memorandum of law, setting forth fairly the factual situation from their viewpoints as developed by the testimony, with competent review of statutes, constitutional provisions, and case law that involved a substantial amount of United States Supreme Court writings.

■ From my review of my rough notes and independent recollection of the testimony, and the factual review in the briefs, there is not much difficulty for me to uphold the seizure of the money from the person of the defendant and the inspection for notation purposes only of the airline tickets as proper and lawful under the applicable legal principles. I find that the money was seized pursuant to a lawful arrest warrant that had been duly issued by the Magistrate in Albany, telephoned to the FBI in Washington, with a follow-up teletype. Such process and procedures authorized and made lawful the arrest, and the seizure of the money that became incident to it after a short period of time, with necessary movement from a narrow hallway to the living room of the apartment. *United States v. Robinson*, 414 U.S. 218, 234–235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973) controls in this factual situation. *Accord Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). The nature of the charges first explained to the defendant at the time of the arrest in the apartment, and later elaborated upon in the FBI office after the receipt of the teletype, were wire fraud and mail fraud and under settled law justified the treatment of the money as evidence and subject to seizure pursuant and incidental to lawful arrest. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

The picking up of the airline ticket envelope and opening it for notation by an agent is somewhat more difficult to decide. However, my review convinces and leads me to the finding that the moving of the defendant from the narrow hallway area where he was apprehended and the arrest was first effected was reasonable under the existing circumstances. It was done I find particularly and reasonably for convenience to talk to the defendant, inform him of charges, and make the search of his person. It was done actually and sensibly to have a place for him to sit and stand conveniently. I do not find that the motive was to bring the defendant into an area where an improper and extensive search could be undertaken. The tickets were in a conspicuous and brightly colored blue-gold airline ticket envelope that I presume without much question would be known immediately to the agents as such from their own personal and official experience. The contention of the defendant is that the envelope could not be in plain view from the ten to fifteen feet of the arrest to the coffee table. Such sighting would, of course, depend on the quality of eyesight of the agents, and might not be improbable or impossible. I find, however, that the agents inadvertently came across the airline tickets after movement to the living room, and again in view of the nature of the charges were justified in seizing and inspecting them as evidence at a time when the defendant was sitting only three feet away. The plain view doctrine governs and the application is supported by the factual situation that it was made in the immediate vicinity of the arrest with the proximity to evidence that might be capable of destruction and concealment. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971); *United States v. Rollins*, 522 F.2d 160, 166 (2d Cir. 1975); *United States v. Candella*, 469 F.2d 173, 175 (2d Cir. 1972); *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *United States v. Jackson*, 576 F.2d 749, 753 (8th Cir. 1978); *Warden v. Hayden, supra.* By no means is there any indication the tickets were seized and inspected as a result of a deliberate roaming and indiscriminate search throughout the apartment at the time after the arrest. A very recent Supreme Court case stated the seizure of property in plain view involves no invasion of privacy, and is presumptively reasonable, assuming there is probable cause to associate the property with criminal activity. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The obtaining of the oral statement taken during what seems to have been a limited question and substantial answer dialogue between the defendant and Agent Richardson under the prevailing circumstances is not as easy to analyze and decide. The term "Interrogation" has been defined in this past month by the United States Supreme Court in *Rhode Island v. Innis,* —— U.S. ——, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), after much disagreement about its meaning. The majority opinion concluded that the *Miranda* (384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) safeguards come into play when a person in custody is subject to either express questioning or its functional equivalent, *id.* at ——, 100 S.Ct. at 1689. The position of the government in regard to the use of the statement at a trial is that portions may be offered in its case in chief or it may reserve its use for possible cross-examination of the defendant. This possible use presents the issues of whether the defendant under the prevailing circumstances knowingly and intelligently waived his right to the presence of his lawyer, who the agents I find knew he had tried to contact by telephone unsuccessfully several times while in custody and whether the statements made were voluntary and rationally made and not coerced directly and indirectly by the agents.

There is one principle of law clearly established in this turbulent field of law and it applies to the approach and perception that must be applied to this issue of the signed waiver that was made by the defendant at 2:40 P.M. in the FBI office after his arrest in the apartment at 1:03 P.M., that same afternoon. *See* Govt. Ex. 1, Ar-

rest Log, Thurs., 10/4/79. The authority is *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

Although inadvertently stating that the defendant was indicted at the time of the arrest, because at that time of arrest a complaint only had been filed and an arrest warrant issued, the defense argues, citing two circuit cases, *United States v. Satterfield*, 558 F.2d 655 (2d Cir. 1976); *Carvey v. LeFevre*, 611 F.2d 19 (2d Cir. 1979), that under the existing circumstances when the defendant had retained an attorney and tried to reach him in their presence, the agents knew he was trying to locate his lawyer and, therefore, there could be no intelligent and intentional waiver of counsel. The factual circumstances in *Satterfield* and *Carvey* are very dissimilar in my judgment to the ones here. In both instances the defendants had been indicted. In *Satterfield* the defendant is described as being distraught, upset, weeping, and out of control at the time of the initial questioning. In *Carvey* the defendant was not informed of the pending indictment against him and there was failure to impart some knowledge of the charges to him.

■ I find that defendant Gordon was advised of the charges upon arrest, and was under no serious emotional strain during his custody with the agents. He changed his own mind and decided, without any pressures from the agents, after time for reflection, to sign the Interrogation: Advice of Rights form in the FBI office. I find that even though he had informed the agents previously that he did not want to sign until he spoke to his lawyer, he voluntarily signed the waiver after he re-read it at his own request. There was no immediate right to counsel upon the arrest pursuant to a lawful warrant and after the filing of a complaint only. *United States v. Duvall*, 537 F.2d 15, 22 (2d Cir. 1976). I find no evidence that there was cajolery, trickery, threats or any direct or indirect pressures employed by the agents to have him sign the form, waiving self-incrimination and advice of counsel rights. That defendant was handcuffed while in custody, but the handcuffs were released when he went to make his telephone calls alone, and loosened when he complained of tightness. I am sure the experience of being a first one with arrest that the defendant was apprehensive, but I do find that he remained in complete control of his senses, was an experienced business man, and I assume an educated person. The atmosphere as portrayed by the testimony was not one of fear on the part of the defendant induced by the conduct of the agents. I find that Gordon testified that Agent Richardson made no specific promises to him and there was no intimation by Agent Richardson that if the defendant gave a statement he would not go to jail later that day. In fact, the defendant was brought to confinement by the agents soon after the statement was given. I find that any state of mind on the part of the defendant that he would not go to jail at that time if he gave the statement was purely subjective and not indicated in any way by the agents. The statement itself has all the earmarks of a free flow of conversation on the part of the defendant with discussion of his own business transactions that would only be within his own knowledge and could not be prompted to any great extent by the limited knowledge Agent Richardson had of the charges. The statement demonstrates its voluntariness, in my judgment, by its content. It was mainly an exculpatory effort by the defendant to blame another person and the statement notes with fairness therein that "Gordon quickly added that he was in no way admitting the charges". The judicial concern, justifiable and unquestioned in circumstances like these, is whether there is an intelligent, voluntary and intentional waiver where a defendant in custody first says he will not sign the waiver form until he

speaks with his attorney, and then later decides differently, and signs without such consultation with his attorney whom he had tried to locate with the knowledge of the agents. However there is no per se rule that precludes a suspect from changing his mind and voluntarily waiving his right, as the defendant did, to make the statement to Agent Richardson, and waive the presence of his lawyer. *See Michigan v. Mosley,* 423 U.S. 96, 108–110, 96 S.Ct. 321, 329, 46 L.Ed.2d 313 (White, J., concurring in result); *United States v. Rodriguez v. Gastelum,* 569 F.2d 482 (9th Cir. 1978, en banc); *White v. Finkbeiner,* 611 F.2d 186 (7th Cir. 1979); *Kennedy v. Fairman,* 618 F.2d 1242 (7th Cir. 1980). There is no obligation on the part of law enforcement officers in the performance of their duties to prevent voluntary statements after the *Miranda* warnings and advice of rights are given and waived. *United States v. Messina,* 507 F.2d 73 (2d Cir. 1974), *cert. denied,* 420 U.S. 993, 95 S.Ct. 1433, 43 L.Ed.2d 676 (1975). Of course, I realize the government has a heavy burden to show voluntary waiver of rights after defendant has first stated he wanted to talk to his lawyer. *See Brewer v. Williams,* 430 U.S. 387, 404, 405 and n.10, 97 S.Ct. 1232, 1242, 1243, 51 L.Ed.2d 424 (1977). I do conclude, however, on the factual circumstances related above as my findings that the government has carried its heavy burden and that the waiver was freely and voluntarily signed, waiving Fifth and Sixth Amendment rights that allowed the statement to be taken and noted in accordance with settled law. Its possible use at the trial is upheld.

■ Finally after consideration of the full affidavits supporting the application in the State court for the appointment of a temporary receiver and the elaborate New York statutory and procedural provisions that were meticulously followed, I conclude that the Superintendent of Insurance appointed by the Court as temporary receiver, pending hearing and determination of a motion for injunction, acted within the bounds of express statutes in the seizure of records at the two locations. It is my judgment that such seizure of all business records in the business places of the defendant was lawful and not violative of Fourth Amendment provisions. There was no testimony offered at the hearings on this issue. Each side by their attorneys presented oral argument. The copies of the State affidavits and court orders are attached to the government's memorandum of law.

The defense urges that numerous facial defects existed in the court orders, such as, failure to particularize, lack of probable cause and failure to provide for time limits and inventory and return of materials seized. Even with concession that the taking of the insurance records was justified as a regulatory search under various provisions of the New York Insurance Law and CPLR 6401(b), it is contended by the defense that there was no authority to seize and turn over other records than insurance records to the federal prosecutors. The temporary receiver has authority under State law to hold and preserve the property. *Matter of Burge,* 203 Misc. 677, 118 N.Y. S.2d 23 (1952).

■ The Fourth Amendment protections of probable cause and specificity do not apply strictly where an administrative or civil order of seizure is issued by a court as in the situation here. To my mind there actually did exist probable cause in a sense it was needed for a showing to a court for the appointment of a temporary receiver to take and hold all the personal and real property of two companies, licensed as insurance agents, under Section 113 of the New York Insurance Law and of which the defendant was sole stockholder and also a New York duly licensed agent himself. The insurance industry is properly subject to State regulations and businessmen in it are subject to reasonable regulations and restrictions. *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Almeida-Sanchez v. United States,* 413 U.S. 266, 277, 93 S.Ct. 2535, 2541, 37 L.Ed.2d 596 (1973); *Matter of Carlson,* 580 F.2d 1365, 1379 (10th Cir. 1978).

Reference to a detailed statute is sufficient to comply with provisions of the

Fourth Amendment. *Matter of Carlson, supra* at page 1376. The Superintendent of Insurance resorted to the injunctive process and applied for the appointment of a temporary receiver because of the apparent futility in following the subpoena procedure provided for by statute. There was a serious and complete business failure affecting the public that is fully described in the affidavits supporting the order to show cause application. Under pertinent provisions of the New York Insurance Law and New York CPLR 6401, there is broad statutory authority for the scope of the court's seizure order. *See United States ex rel. Terraciano v. Montanye,* 493 F.2d 682 (2d Cir. 1974). Administrative or civil orders of the nature issued in this instance do not require probable cause in a criminal sense. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978); *see also Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *United States v. Biswell,* 406 U.S. 311, 316, 92 S.Ct. 1593, 1596, 32 L.Ed.2d 87 (1972). The impression comes through strong from the court application and decision supported by substantial showing for prescribed statutory and equitable relief, with opportunity for the defendant and the officers of his company to be heard, that there was compliance with Fourth Amendment provisions in accordance with the standards enunciated by the Supreme Court to be met in this type administrative and civil seizure that was undertaken. Therefore, the seizure of the records was lawful and due process was fully accorded.

The separate motions in the Omnibus Motion relating to suppression of Statements of Defendant and unlawful Search and Seizure are denied in their entirety and dismissed. This decision contains my findings of fact and conclusions of law. F.R.Cr. Proc. 12(e).

It is so Ordered.