**Eric CARVEY, Petitioner-Appellant,**

v.

**E. S. LeFEVRE, Superintendent, Clinton Correctional Facility, and Attorney General, State of New York, Respondent-Appellee.**

**No. 312, Docket 79–2118.**

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1979.

Decided Dec. 12, 1979.

Phylis Skloot Bamberger, The Legal Aid Soc., Federal Defender Services Unit, New York City, for petitioner-appellant.

Gale D. Berg, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Gerald J. Ryan, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before KAUFMAN, Chief Judge, SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Charles H. Tenney, *Judge*, denying Eric Carvey's petition for a writ of habeas corpus. Carvey is serving a prison sentence of 8 to 25 years after being convicted in New York Supreme

Court, Bronx County, of sodomy, sexual abuse and sexual misconduct. He attacks his conviction on the ground that statements were admitted at trial which had been elicited from him by a state detective in violation of his right to counsel under the sixth and fourteenth amendments.

The district court found that Carvey waived his right to counsel before making the statements to the detective and upheld the conviction. We hold that the record does not support a finding of waiver. The detective's failure to advise Carvey that he had already been indicted rendered any waiver by Carvey ineffective, and the admission at trial of Carvey's statements to the detective was therefore constitutional error. However, we affirm the denial of the writ because we find that the error was harmless in the circumstances of this case.

### I.

The statements at issue were made by Carvey to Detective Gordon Krakower. Krakower first questioned Carvey on February 28, 1972, more than two months after Carvey was indicted on charges of sodomizing and sexually abusing a 12-year-old girl in Crotona Park in October, 1971. The questioning took place in the hallway, in the elevator and on the stairway of the Criminal Court Building in Manhattan, where Carvey was being held on an unrelated charge.

According to his undisputed testimony at trial, Krakower identified himself to Carvey and said he wanted to ask some questions about a sexual attack on a young girl in Crotona Park the preceding October. Krakower testified that before asking any questions, he "advised [Carvey] of his rights":

> I told him that he does not have to make any statements to me but if he does make any statements, they can and would be held against him [and] that he's entitled to counsel, legal counsel, and if he could not afford counsel, that counsel would be provided for him and counsel would be available for every stage of the proceedings.

Krakower asked Carvey if he understood, and Carvey answered that he did. The detective then asked Carvey if he had been responsible for the October attack. Carvey replied that he had not been near Crotona Park during the month of October.

Krakower questioned Carvey a second time when he arrested him on March 25, 1972 at the Bronx House of Detention. Krakower advised Carvey of his rights in essentially the same words he had used at their first meeting, and Carvey again stated that he had not been near Crotona Park in October, 1971. Krakower also asked Carvey for permission to fingerprint him, and Carvey refused, adding, "You don't worry me, I could do 99 years standing on my head."

There is no suggestion in the record that Krakower ever informed Carvey that an indictment had been filed against him, nor that the detective had reason to believe Carvey knew about the indictment.

### II.

A person comes under the protection of the sixth and fourteenth amendment right to counsel from the moment judicial proceedings are initiated against him, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Statements elicited from the accused by the police after this point without the presence or aid of a lawyer may not be used against him at trial unless the state can show that he knowingly, voluntarily and intelligently waived his right to counsel. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *United States v. Satterfield*, 558 F.2d 655, 657 (2d Cir. 1976). In order to establish such a waiver, the state must meet the heavy burden of showing that accused understood his right to counsel and knowingly relinquished it; every reasonable presumption against waiver is to be indulged by the court. *Brewer v. Williams, supra*, 430 U.S. at 404, 97 S.Ct. 1232; *Satterfield, supra*, 558 F.2d

at 657; *United States v. Lord*, 565 F.2d 831, 839 (2d Cir. 1977).[1]

The record before us in this case does not support a finding of waiver. We conclude that Detective Krakower's failure to advise Carvey of the indictment pending against him, or to take reasonable steps to ascertain that Carvey knew of the indictment, precludes a finding that Carvey knowingly, voluntarily and intelligently waived his sixth amendment right to counsel.

Similar facts were considered by the district court in *United States ex rel. Lopez v. Zelker*, 344 F.Supp. 1050 (S.D.N.Y.), *aff'd without opinion*, 465 F.2d 1405 (2d Cir.), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 529, 34 L.Ed.2d 501 (1972). FBI agents placed Lopez under arrest, told him of his right to counsel and secured his consent to an interrogation without a lawyer's aid, but neglected to mention that an indictment had already been filed against him. The court held that the failure to advise Lopez of "so stark a legal fact" rendered the waiver ineffective and his statements to the FBI inadmissible at trial. 344 F.Supp. at 1055.[2] *Accord, United States v. Pimentel*, 459 F.Supp. 923, 927 (S.D.N.Y.1978).

Without knowledge of a pending indictment, the accused cannot appreciate the gravity of his legal position or the urgency of his need for a lawyer's assistance. Carvey, for example, may have hoped to dispel Krakower's suspicion by the use of bluster and the forceful repudiation of the detective's accusatory questions. Had he known that he was not merely suspected of the crime but actually under indictment, Carvey might well have been more circumspect in his replies and more insistent on his immediate right to counsel.

The appellee contends that Krakower's recitation of Carvey's rights and Carvey's statement that he understood constituted a valid waiver under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda*, however, involved not the sixth amendment right to counsel but the fifth amendment right against self-incrimination. What might suffice to comply with *Miranda* will not necessarily meet "the higher standard with respect to waiver of the right to counsel that applies when the Sixth Amendment has attached." *Satterfield, supra*, 558 F.2d at 657, *quoting United States v. Massimo*, 432 F.2d 324, 327 (2d Cir. 1970) (Friendly, C. J., dissenting), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 633 (1971). Because we hold that failure to inform Carvey of the pending indictment precluded a knowing waiver of his sixth amendment rights, we need not decide whether Krakower's casual, disconnected and abbreviated statement of Carvey's rights was sufficient even to meet *Miranda's* less stringent requirements.

The appellee also urges that a finding of waiver is justified because Krakower employed no coercion or deceit and because Carvey was not "an individual distraught, upset, weeping and obviously out of control," as was the accused in *Satterfield, supra*, 558 F.2d at 657. Neither coercion nor emotional unrest, however, need be shown in order to find that the accused lacked a full understanding of his legal posture and therefore could not have made a rational, intelligent waiver of his right to counsel. *See Brewer v. Williams, supra; United States v. Spencer*, 439 F.2d 1047, 1051 (2d Cir. 1971).

## III.

Our conclusion that Carvey's statements to Detective Krakower were obtained in

---

1. "When an indictment has come down, riveting tightly the critical right to counsel, a waiver of that right requires the clearest and most explicit explanation and understanding of what is being given up." *United States ex rel. Lopez v. Zelker*, 344 F.Supp. 1050, 1054 (S.D.N.Y.), *aff'd without opinion*, 465 F.2d 1405 (2d Cir.), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 529, 34 L.Ed.2d 501 (1972).

2. As noted in *United States v. Diggs*, 497 F.2d 391, 393 n.3 (2d Cir.), *cert. denied*, 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974), this court's summary affirmance of the district court's decision in *Lopez* has no precedential value. *See* Local Rule § 0.23 of the United States Court of Appeals for the Second Circuit. We cite *Lopez* not as controlling Second Circuit precedent but as a well-reasoned district court disposition of a similar case.

violation of Carvey's sixth amendment rights and should not have been admitted against him at trial does not, in itself, mandate reversal of Carvey's conviction. The conviction may still stand if the constitutional error was harmless beyond a reasonable doubt—that is, if there is no reasonable possibility that the jury would have reached a different verdict had the offending testimony been excluded. *Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Carvey asserts that he was prejudiced by the admission of his statements to Krakower. He contends that his refusal to be fingerprinted and his statement, "You don't worry me, I could do 99 years standing on my head," may have seemed to the jury to be the evasive responses of a guilty man. He further contends that his declaration that he had not been near Crotona Park during the month of October may have damaged his case with the jury in light of evidence that his fingerprint was found on a partially filled beer can at the site of the sexual attack hours after the attack occurred on October 13.

 Imputing to these statements their maximum potential prejudicial impact, we have no doubt that their exclusion would not have altered the guilty verdict. None of the statements was an admission of wrongdoing. None revealed an inconsistency in Carvey's position.[3] Most important, none played a significant role in the case against Carvey, which was based on the victim's positive identification of him as her assailant,[4] on medical examinations of the victim which showed signs of sexual abuse and on the beer can fingerprint. *See Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Wilson v. Henderson*, 584 F.2d 1185, 1189 (2d Cir. 1978); *United States v. Williams*, 523 F.2d 407, 409–10 (2d Cir. 1975).[5]

Because admission of Carvey's statements at trial was harmless error, we affirm the district court's denial of the petition for writ of habeas corpus.

---

**3.** *Cf. Lopez, supra*, 344 F.Supp. at 1055–56, in which the wrongful admission of the defendant's exculpatory statements was held not to be harmless error because the statements contradicted his courtroom testimony. In this case Carvey's denial that he was near the park in October was consistent with his position at trial. Carvey himself did not take the stand, nor did he produce any witnesses. During cross-examination and closing argument, Carvey's counsel never conceded that Carvey had been near Crotona Park during October; he suggested instead that the beer can could have been sitting in the park with Carvey's fingerprint on it for weeks before it was found, or that Carvey could have passed the can to a friend, who then carried it into the park.

**4.** We note that the victim had ample opportunity to fix her assailant's appearance in her memory before, during and after the three-hour ordeal.

**5.** N.Y. Penal Law § 130.16 (McKinney 1975) provides that the victim's uncorroborated testimony is insufficient to support a conviction for various sex offenses, including sodomy and sexual abuse. Carvey asserts that without his statements to Detective Krakower such corroboration is lacking. The record, however, shows that the victim's testimony was adequately corroborated by the medical reports and by evidence of the beer can fingerprint.