**James RIDDICK, Appellant,**

v.

**Robert EDMISTON, Superintendent of Southern State Correctional, and The Attorney General of the State of New Jersey, Appellees.**

**No. 89–5321.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 14, 1989.

Decided Jan. 16, 1990.

---

Barbara M. Donovan, Federal Public Defender, Office of Federal Public Defender, Newark, N.J., for appellant.

Mildred Vallerini Spiller and Catherine A. Foddai, Office of Atty. Gen., Trenton, N.J., for appellees.

Before HUTCHINSON, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

Appellant, James Riddick (Riddick), appeals an order of the United States District Court for the District of New Jersey denying his petition for a writ of *habeas corpus* brought pursuant to 28 U.S.C.A. § 2254 (West 1977). The petition sought a writ directed to appellees, Robert Edmiston (Edmiston), Superintendent of the New Jersey State Prison in which Riddick is held, and the Attorney General of New Jersey. By order dated August 10, 1989, a motions panel of this Court granted Riddick's motion for a certificate of probable cause. The case is now ready for decision, following submission on the merits on December 14, 1989.

■ Riddick raises two issues. He contends first that the district court erred in finding that he had knowingly and intelligently waived his Sixth Amendment right to counsel when two investigators from the Hudson County, New Jersey prosecutor's office gave him Fifth Amendment *Miranda* warnings without telling him that the State of New Jersey had already indicted him for murder.[1] Second, Riddick argues that the district court erred in denying his equal protection claim based on the New Jersey prosecutor's alleged racially discriminatory use of peremptory challenges contrary to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[2]

In *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the United States Supreme Court concluded that there is no analytical distinction between the validity of a Fifth Amendment waiver and a Sixth Amendment one. Several of our sister courts of appeals have also rejected Riddick's argument that a person cannot knowingly and intelligently waive his post-indictment Sixth Amendment right to counsel unless he is advised of the indictment beforehand. However,

[1] Riddick notes in his statement of facts that he responded to the Hudson County investigators' greeting with a potentially incriminating nickname before the *Miranda* warnings were administered, but does not expressly argue that the greeting, which elicited a potentially incriminating response, was in violation of his Fifth Amendment *Miranda* rights. To the extent that he inferentially raises that question, we hold it lacks merit.

[2] In his § 2254 petition in the district court, Riddick also contended that the New Jersey prosecutor violated his constitutional rights by failing to disclose grand jury evidence favorable to him. This contention is not argued on appeal. Accordingly, we do not consider it.

for support, Riddick cites a line of decisions in the Court of Appeals for the Second Circuit illustrated by *United States v. Mohabir*, 624 F.2d 1140, 1145–53 (2d Cir.1980), *Carvey v. LeFevre*, 611 F.2d 19, 21–22 (2d Cir.1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980), and *United States v. Satterfield*, 558 F.2d 655 (2d Cir.1976), where the failure to adequately inform defendants of pending indictments in certain situations precluded knowing waivers of their Sixth Amendment rights.

This presents a question of first impression in this Circuit. After considering it, we are constrained to reject the reasoning of the cases in the Second Circuit and instead hold that the *Miranda* warnings the investigators gave Riddick were sufficient, on this record, to advise him of his Sixth Amendment post-indictment right to counsel. Accordingly, we hold that he knowingly and voluntarily waived that right when he made his custody statements to the investigators and that those statements were properly admissible at trial.

We also reject Riddick's claim that he is entitled to an evidentiary hearing in the district court on the issue of whether the state prosecutor utilized peremptory challenges in a discriminatory manner. The record shows that the district court conducted an inquiry on this issue when it was raised, as required by *Batson;* received an explanation from the prosecutor that it found credible; and then found that the prosecutor's use of peremptory challenges was without racial basis. The record supports this finding. Therefore, we hold that the district court did not err in refusing Riddick an evidentiary hearing. The decision of the district court will be affirmed.

## II.

Riddick is a prisoner presently incarcerated at the Southern State Correctional Facility in Delmont, New Jersey. He was indicted by a Hudson County, New Jersey grand jury on November 9, 1984 for murder, possession of a weapon for an unlawful purpose, and unlawful possession of a handgun. On November 1, 1984, he was arrested in the State of Virginia on a warrant issued as a result of the alleged New Jersey crimes. There he signed a waiver of extradition on a form that stated he had been charged with murder in New Jersey. *See* Appendix of Appellant (App.) at 2a.

On December 14, 1984, Riddick entered a plea of not guilty to all counts of the indictment. After a jury trial, he was convicted of voluntary manslaughter and unlawful possession of a handgun. He was sentenced to an extended fifteen year custodial term, with a seven and one-half year period of parole disqualification, on the manslaughter charge and a concurrent four year custodial term on the weapons charge. He was also assessed a fine of $50.00.

Riddick appealed these convictions to the Superior Court of New Jersey, Appellate Division. There he raised the several grounds for relief that were the subject of his *habeas corpus* action in the district court. The appellate division affirmed the trial court *per curiam. Id.* at 17a. Riddick then petitioned the Supreme Court of New Jersey for certification, again raising the issues he later presented to the district court. The Supreme Court of New Jersey denied certification. *Id.* at 25a. Riddick then brought an action for a writ of *habeas corpus* under § 2254 in federal district court.

## III.

Riddick's convictions arose out of a dispute over money with a person named Dewey Badger (Badger). In June of 1984, Badger was shot and left lying in a vacant lot in Jersey City, New Jersey. Badger later died from the wounds caused by the shooting. Before he died, Badger identified the person who shot him by the names "James" and "Gump." Riddick's nickname is Gump.

After Riddick had been arrested for killing Badger in Suffolk, Virginia, and had waived extradition, two New Jersey investigators were sent to Virginia to return him to New Jersey. In Virginia, upon first seeing Riddick, these investigators greeted him with the name "Gump." Riddick re-

sponded to this greeting and expressed confusion as to why he was arrested. The investigators then informed Riddick orally and in writing of his constitutional rights, in accordance with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and proceeded to question him about the homicide charge. Riddick responded by raising a claim of alibi, claiming that he did not even know Badger and saying that the accusation of murder was unjust. Riddick sought to suppress his statements but, after a suppression hearing, the New Jersey trial court ruled that they were admissible. At trial, the prosecutor put Riddick's statements into evidence as part of his case-in-chief.

During jury selection in October 1985, Riddick, who is black, objected to the prosecutor's use of a peremptory challenge to excuse Sheila Reynolds (Reynolds), a black secretary for the Jersey City Board of Education. Riddick claimed that she was the third black juror excused by the prosecutor. The prosecutor responded to Riddick's objection by noting that he had pronounced the jury satisfactory several times when blacks were on the venire. The record confirms this. *See* App. at 262a. The prosecutor went on to specifically explain that he excused Reynolds because he had often been involved in investigations of the Jersey City Board of Education while she was employed there and he believed she recognized him. *Id.* With this explanation, the trial court rejected defense counsel's claim that the state was using its peremptory challenges in a racially discriminatory way. *Id.*

At trial, the state introduced the testimony of Riddick's friend, John Burt (Burt), in addition to the statement Riddick had given to the New Jersey investigators in Virginia. Burt testified that Riddick was in New Jersey on the day Badger died and that Riddick had told Burt that he had had a confrontation with Badger, that Badger was armed, and that he had taken the gun from Badger. *Id.* at 20a. Riddick did not testify. The jury found Riddick guilty of manslaughter and possession of a handgun without a permit.

## IV.

■ Before a United States district court can entertain a state prisoner's petition for a writ of *habeas corpus* pursuant to § 2254, the prisoner must exhaust state remedies. *See* 28 U.S.C.A. § 2254(b); *Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The district court did not explicitly deal with the exhaustion issue, but proceeded to the merits. We are, however, satisfied that Riddick exhausted state remedies in this case. All of the issues he raised in the district court had been raised before the Appellate Division of the Superior Court of New Jersey as well as in his petition for certification to the Supreme Court of New Jersey. This is not a case in which the claims were raised before a state supreme court for the first time on a petition for discretionary review. *See Castille v. Peoples,* —— U.S. ——, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (raising a claim for the first and only time to the state's highest court on discretionary review does not satisfy the fair presentation requirement of the exhaustion doctrine).

We have plenary review over Riddick's contention that the district court erred in finding that his waiver of the Sixth Amendment right to counsel was knowing and voluntary. *See Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985) (" 'voluntariness' is a legal question requiring independent federal determination"). In reviewing the district court's decision to dismiss, without an evidentiary hearing, Riddick's claim that the prosecutor violated his Fourteenth Amendment equal protection rights by using peremptory challenges to jurors in a racially discriminatory manner, we must decide whether the record before the district court shows, on its face, that the state trial judge fairly and adequately considered the matter and, after that consideration, that the trial judge's finding that the prosecutor's peremptory challenges were not racially motivated is fairly supported by the record. *See* 28 U.S.C.A. §§ 2254(a) & (d).

## V.

Having already determined that probable cause for an appeal exists under *Barefoot*

*v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), we proceed to analyze the merits of the two issues Riddick raises on this appeal.

### A.

■ Riddick contends that he was denied counsel at a critical stage in the criminal proceedings against him in violation of the Sixth Amendment, as incorporated against the states by the Fourteenth Amendment.[3] Specifically, he argues that the failure to inform him that he had been indicted for murder when the investigators questioned him in Virginia precluded him from making a knowing, voluntary and intelligent waiver of his Sixth Amendment right to counsel. He acknowledges that he was advised of his Fifth Amendment right to counsel before responding to custodial interrogation, but states that the *Miranda* warnings alone did not provide him with information necessary to accomplish a valid waiver of the Sixth Amendment right that attaches upon indictment. In making that argument, Riddick relies on a line of cases in the Second Circuit, illustrated by *United States v. Mohabir,* 624 F.2d 1140 (2d Cir. 1980), *Carvey v. LeFevre,* 611 F.2d 19 (2d Cir.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1858, 64 L.Ed.2d 276 (1980), and *United States v. Satterfield,* 558 F.2d 655 (2d Cir.1976).

In *Satterfield,* the Second Circuit held that a defendant who was given *Miranda* warnings and advised that he was under indictment did not make a "knowing" and "intelligent" waiver of his Sixth Amendment right to counsel when it appeared that he was distraught and upset when the *Miranda* warnings were given. 558 F.2d at 657. In *Mohabir,* the Second Circuit extended this rationale by holding that furnishing a defendant with a copy of the indictment when giving him the *Miranda* warnings is not enough to permit a valid waiver of the Sixth Amendment post-indictment right to counsel. 624 F.2d at 1149–50. The Second Circuit holds interrogation of an indicted defendant unlawful unless a neutral judicial officer first advises him of his Sixth Amendment rights and explains the significance of the right to remain silent and of the right to the presence of an attorney. *Id.* at 1153. That circuit apparently does not base this additional safeguard on the Constitution itself, but instead imposes it in the exercise of its supervisory power, possibly to minimize disputes about whether the government has met its "heavy burden" of showing an indicted defendant has waived his Sixth Amendment rights. *Id.* at 1151–53. Considering that heavy burden, it holds that there is no valid Sixth Amendment waiver unless a "higher standard" than that required by the Fifth Amendment is satisfied, and therefore, police administration of the *Miranda* warnings are insufficient to effectuate that waiver. *Id.* at 1148.[4]

Riddick recognizes that the United States Supreme Court in *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), held that the Fifth Amendment *Miranda* warnings are sufficient to make a defendant aware of his Sixth Amendment right to counsel in the context of post-indictment questioning. He also recognizes that the Court drew no analytical distinction between Fifth Amendment and Sixth Amendment rights in *Patterson.* Nevertheless, Riddick contends that *Patterson* leaves open the question of whether a defendant must at least be advised expressly of the fact that he has been indicted before he can intelligently waive his post-indictment Sixth Amendment right to counsel. Since he was not expressly told that he had been indicted when the New Jersey investigators questioned him, Riddick argues, despite *Patterson,* that the *Miranda* warnings he was given were insufficient.

We cannot accept Riddick's argument. It runs counter to the cases dealing with the issue of valid Sixth Amendment waiver

---

**3.** The Sixth Amendment provides: "In all criminal prosecutions, the accused shall ... have the assistance of counsel for his defence."

**4.** It is difficult to understand how this ruling would be binding on a state court over which a court of appeals has no supervisory power. Nevertheless, we will consider the issue on its substantive merits.

in the majority of circuits. *See Patterson*, 108 S.Ct. at 2397 n. 8 ("As have a majority of the Courts of Appeals, we reject *Mohabir*'s holding that some 'additional' warnings or discussions with an accused are required in this situation....") (citation omitted). We find the reasoning of these cases to be persuasive. Moreover, Riddick's position has been specifically rejected by the Seventh Circuit in *Quadrini v. Clusen*, 864 F.2d 577, 585–87 (7th Cir.1989). In *Quadrini*, while the accused was not expressly told about his indictment, he knew that he had been arrested for murder and freely chose to speak to the police after the *Miranda* warnings were given. Here, the record shows that Riddick also knew about the murder charge. It was mentioned in the waiver of extradition that he had signed, and he knew that the New Jersey authorities had sought his extradition on that basis. He was plainly aware of the gravity of his situation.

Riddick's argument is also refuted by the rationale and language of the opinion in *Patterson*. There, the Supreme Court stated that the key to determining the validity of a Sixth Amendment waiver is whether "the accused, who waived his Sixth Amendment rights during postindictment questioning, [was] made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forego the aid of counsel." 108 S.Ct. at 2395. The rationale for the Supreme Court's holding in *Patterson* that *Miranda* warnings are sufficient to waive counsel for post-indictment questioning has several prongs. In the first place, the Court pointed out that *Miranda* warnings make it clear that an accused has a right to consult with an attorney, to have one present during questioning and, if necessary, to have one appointed at state expense. They "conveyed to [the accused] the sum and substance of the rights that the Sixth Amendment provided him." *Id.* Second, *Miranda* warnings inform an accused of the consequences of a decision to

speak to law enforcement officials without counsel; namely, that any statement he makes can be used against him in later criminal proceedings. *Id.* Finally, *Miranda* warnings let the accused know what an attorney can do during post-indictment questioning; namely, advise him to speak or remain silent. The Supreme Court said:

> By knowing what could be done with any statements he might make, and therefore, what benefit could be obtained by having the aid of counsel while making such statements, petitioner was essentially informed of the possible consequences of going without counsel during questioning. If petitioner nonetheless lacked "a full and complete appreciation of all of the consequences flowing" from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum.

*Id.* at 2395–96 (citation omitted).

We are not persuaded by either Riddick's attempt to distinguish *Patterson* or his insistence that this case should be governed by the decision of the Second Circuit in *Carvey*, even if that case remains good law after *Patterson*. *Carvey* itself is distinguishable from Riddick's case. In *Carvey*, a policeman questioned the defendant about one charge while he was held in a criminal court building on an unrelated charge. Although the police officer did read the defendant his *Miranda* rights, he did not advise him that an indictment had been returned on the unrelated charge or otherwise advise him that he was a suspect in that unrelated charge. 611 F.2d at 21. This is not the situation here. Riddick was held on the same murder charge about which he was interrogated.

We hold that the district court did not err in denying Riddick's claim that the statements he gave the New Jersey investigators after his indictment were admitted into evidence in violation of his Sixth Amendment right to counsel.[5]

---

5. Since there was no Sixth Amendment violation in this case, we do not reach the state's argument that the admission of Riddick's statements was harmless error. We note, however, that Riddick's statements to the investigators made no direct admissions and that other evidence in the record, particularly the testimony

## B.

■ We must also reject Riddick's claim that he is entitled to an evidentiary hearing in the district court on his contention that the state prosecutor exercised several peremptory challenges to improperly exclude black persons from the jury on the basis of their race. Riddick, who is black, argues that such a hearing is required in order to determine whether his constitutional right to equal protection of the laws under the Fourteenth Amendment was violated.[6] This argument ignores the facts in the record showing that the New Jersey trial court fairly considered Riddick's claim and found the facts against him.

The record shows that during jury selection, the prosecutor exercised nine peremptory challenges. App. at 202a, 205a, 209a, 211a, 221a, 237a, 247a, 254a, & 261a. Viewing the record favorably to Riddick, we can infer that three of the jurors the prosecutor peremptorily excused were black.[7] The last of these was Reynolds, who was employed by the Jersey City Board of Education. After the prosecutor peremptorily excused Reynolds, defense counsel objected for the first time to the manner in which the prosecutor was using his peremptory challenges. He stated: "The Prosecutor just bumped his third person who is black in a very quick manner. I think he is exercising his preemptory [sic] challenges in a discriminatory fashion based on race." Id. at 261a–62a. Responding, the prosecutor explained:

Your Honor, I used many challenge—I said the Jury was satisfactory many times when there were black people on the Jury. My reasoning for just excusing that last juror very quickly was as an investigator I investigated the Board of

Education and I was down at their office on numerous occasions and I fear, perhaps, she may recognize me.

Id. at 262a.

The trial judge found that the prosecutor did not use his peremptory challenges in a racially discriminatory manner in violation of the equal protection principles later reaffirmed in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[8] The judge expressly noted that the prosecutor had stated his satisfaction with the jury while there were black persons on it. App. at 262a. The trial court's finding as to the credibility of the prosecutor's explanation was, of course, presumptively correct and entitled to deference from the district court in a § 2254 habeas corpus action. See 28 U.S.C.A. § 2254(d) (the district court must defer to factual findings of the state court that are fairly supported by the record).

After examining the record, the district court first noted that defense counsel did not provide any information about why the two black venire persons other than Reynolds had been excused. App. at 43a n. 7. However, the district court did not hold that Riddick had failed to show that other blacks were excluded, a factual showing necessary to his prima facie case under Batson. Cf. Government of Virgin Islands v. Forte, 806 F.2d 73, 75–76 (3d Cir.1986) (failure to contemporaneously object at trial when other blacks were excused and to preserve the record for appeal constitutes a waiver of the argument on appeal). Instead, it considered the exclusion of these other two blacks as circumstantial evidence to support Riddick's claim of discrimination in the peremptory chal-

---

of his friend Burt, was sufficient to establish his guilt.

6. The Fourteenth Amendment states (in relevant part): "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

7. Riddick contends that perhaps as many as five of the excused jurors were black. We are unable to verify that contention from the record before us, and it was Riddick's responsibility to protect and prepare the record.

8. The equal protection principles announced in Batson have been held to apply retroactively to all cases pending on direct review at the time that decision was announced. See Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). Riddick's case remained pending on direct appeal when Batson was announced, and hence his equal protection claim should be analyzed under the test articulated in that case.

lenge of Reynolds. App. at 42a–43a. After deciding that Riddick had made out a *prima facie* case of racial discrimination, the district court applied the test set forth in *Batson* to determine whether the prosecutor had indeed used his peremptory challenges in an unconstitutional manner. On the record before it, as summarized above, the court held that the prosecutor had provided a race-neutral reason for challenging Reynolds. *Id.* at 43a–44a. Therefore, it determined that Riddick's *Batson* claim lacked merit.

The district court was correct. Assuming Riddick did make a showing sufficient to establish a *prima facie* case of discrimination, despite his failure to fully preserve the record, the burden shifted to the prosecutor to state a race-neutral reason for challenging the juror in question. We recognize that this burden is not met by a prosecutor's simple statement that he is acting in good faith and for non-discriminatory reasons. *See Batson*, 476 U.S. at 98, 106 S.Ct. at 1723. However, the prosecutor's explanation need not rise to the level that would justify a challenge for cause. *Id.* at 97, 106 S.Ct. at 1723. *Batson* entrusts the factual decision as to the credibility of the reason given for the challenge to the trial court. That court is instructed to recognize the many bases upon which a prosecutor can reasonably believe that a juror, not excusable for cause, can nevertheless be peremptorily stricken. *See id.* at 98 n. 20, 106 S.Ct. at 1724 n. 20. Here, the trial court assessed the prosecutor's proffered reason for peremptorily challenging Reynolds. That assessment turned on issues of credibility within the factual context of the case. The district court had before it rational findings of fact that were sufficient to support the trial court's denial of Riddick's *Batson* claim and properly deferred to them. *See id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21; *United States v. Clemons*, 843 F.2d 741, 745 (3d Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988).

Accordingly, we reject Riddick's argument that the district court should have granted him an evidentiary hearing because the trial judge's inquiry was not as extensive as *Batson* requires.

## VI.

For the foregoing reasons, we will affirm the district court's order denying Riddick's petition for a writ of *habeas corpus* under 28 U.S.C.A. § 2254.